Hamilton v. Miller, Case No. 21-35326. I believe Mr. Bornstein goes first. May it please the Court. Good morning, Your Honors. Anthony Bornstein on behalf of Donald Hamilton. Your Honors, with the Court's permission, I'd like to focus this morning on the issue of counsel, defense counsel's failure to lodge a critical objection, critical objections, to the prosecutor's repeated instances of vouching during the rebuttal summation and explain to the Court why no reasonable counsel would fail to lodge those objections. First and most importantly, there was no question that the prosecutor was placing her prestige, the prestige of her position as district attorney behind the veracity of the complainant's testimony. We see that in the summary of the argument, the quotation actually on page 37 of the appellee's brief that recites the argument in full. Your Honors, the prosecutor twice placed herself at the center of the narrative. She discusses twice that she herself met with the complainant. And in that discussion, in reciting those meetings, repeatedly tells the jury that the complainant is being honest and truthful, saying she's not making anything up. That is in placing herself as part of that factual narrative, heightens the impact of the vouching. Counsel, I find the rule about vouching confusing to apply, even when I was a trial judge trying to figure out where the line is of what's okay and what's not okay. So if the district attorney's statement had been based on all the evidence in this case, we know she's being truthful. Would that be okay? That would be closer to permissibility. But these emphatic declarative short sentences, she is not making anything up, isn't prefaced by based on the evidence. It's just flat out a statement and repeated statements. She is not making this up. She is not lying. This happened to her. That crosses the line. That's where it becomes quintessential vouching, Your Honor. I had a slightly different take on this. It seemed to me that this issue of vouching has such a wobbly line between what is vouching and what is not, that it's hard to say when reasonable jurists could not differ. Your Honor, the case law holds that when a prosecutor, prosecuting attorney, implies extra record verification of the witness's credibility, that is clear-cut vouching or places the prestige of her position behind the testimony of the witness. That's clear vouching. And that is what happened here. Can you give me a case? I saw some cases and they seem to have other things going on in them, such as referring to the judge and plea agreements and talking about policemen's benefits and stuff like that. But a case that had just no extra factors, just the prosecutor gets up there and says, she is not lying. A case like that with no extras. I think the Ninth Circuit decision, perhaps, that is most on point is cited in our reply brief. The Kerr decision that discusses a case where the prosecutor is saying the witness is being honest, the witness is being truthful and holds that that is vouching. There is a case we cite from the Sixth Circuit, the Hodge v. Hurley case that involved vouching. So those would be probably the most compelling cases and the most clear-cut cases. But the one that is often cited by this court and by the parties in discussing issues involving vouching, Your Honor, is the Nisotche case, which is a direct criminal appeal using a plain error analysis involving vouching. What this court did in that case is identify elements of the vouching that assess how much impact it is likely to have on the trial in light of those elements. What we see is, item by item, the vouching here was over the line, was clear-cut, was harmful. The vouching involved the importance of the witness's testimony. That is an essential issue in the case, whether this child should be believed by the jury. It went to the heart of the case. How much the vouching implies the extra-record knowledge of the witness's veracity. And that's again where the prosecutor's placing herself in the inside the narrative becomes so important because that implies extra-record knowledge, Your Honor. The timing of the vouching. This happened in a rebuttal summation with absolutely no time or opportunity in the context of a trial setting to reply. An objection is the only way that defense counsel can counter that deleterious and harmful impact on the jury's decision. Nisotche discusses whether or not there was a curative instruction and whether or not the vouching was ameliorated by the court's instructions. And it definitely was not. Because of counsel's failure to lodge the objection, there was no curative instruction. I would point out here in this vein, respondent kind of emphasizes that the court gave the classic instruction about how arguments are not evidence. It's going to have no impact in this kind of situation. And I'll explain to the court why. If you look at that instruction that's quoted in Appellee's brief on page 41, what the court says is arguments are not evidence. And if there's a discrepancy between your recollection, members of the jury, and the prosecutor's argument, then go with your recollection. So that's not going to diminish the impact of the vouching. It's just saying if you see a conflict between the argument and the evidence, then go with your recollection. Secondly, the instruction explains to the jury how their determination should not be based on bias, should not be based on conjecture. Rather, it should be based on their consideration of the evidence. What this argument is doing, these repeated instances of vouching, is bolstering improperly the strength of the state's evidence. So counsel, you're making the vouching argument in the context of an ineffective assistance claim. And so as part of that analysis, as you know, we have to look at prejudice. It seems like you have an uphill battle there. We have two acts charged. One he admits, or doesn't contest, I guess, is maybe the right way to say that. So this is about a child witness alleging two things happened. One of them, the record establishes it happened. There's no indication she lied about that because he's not even contesting it. So this is all about the second one. And where you have that situation, doesn't the record already give some strength to her credibility that you're going to have a hard time with in a prejudice analysis? Well, I actually think the prejudice on the sodomy count is pronounced and all the more makes the vouching all the more impactful. Keep in mind, Your Honors, this is a close case on that count. The jury itself, during their deliberation, posed a question to the judge pertaining to the sodomy count and had some difficulty arriving at that before the judge answered the jury's question and they went back to deliberate. So unlike the first count where there was very serious admissions by Mr. Hamilton and the letter of apology that covered the sex abuse charge, that did not cover this second, more serious allegation that came up much later after the child's first disclosure of the It's a close case on that more serious second charge, Your Honors. With that, I see I have about half a minute. I'd like to save that half a minute for rebuttal, if I may. Alright, Mr. Casper? Thank you, and may it please the Court and Counsel, I'm Michael Casper here on behalf of the State of Oregon. I guess I will just focus also on the prosecutorial vouching issue. Before I get to that issue, I wanted to just make one point about the record. Counsel called me and pointed this out and I just wanted to make sure it was clear. We said in our brief, in the explanation of the background of the case, we talked about this interview that Petitioner had with a police officer in which it was a polygraph interview, and I just want to be clear to the Court that and what I cited to describe what happened during that interview where Petitioner admitted to the sex abuse incident, I cited to the police officer's report which is in the PCR record. That report, though, just to be clear, wasn't in front of the trial. No one in the trial heard about a polygraph, and so what happened, the way the State the jury heard a taped version of the confession, but the trial court said that there was no mention to be made of the polygraph, obviously, and so I just wanted to be clear that the polygraph didn't come in. So with that, I do want to turn to the I didn't catch your last point. The evidence of a polygraph never came in. Correct. So everything, the confession that occurred during the polygraph interview did come in. All of the contents of that came in. But the fact that he was hooked up to a polygraph machine, or that he failed the polygraph, none of that came in. I felt like it wasn't clear from the way I wrote the background section and I just wanted to make sure that the court was aware of that. The question on the Strickland analysis is whether this was a reasonable application of Strickland to conclude that reasonable counsel could have decided not to object to this closing argument. And the problem, I think, for Petitioner in this case, is that the line between vouching and not vouching in this area is a difficult one. And in that respect, I honestly think that it questions out a legal disagreement so much as a factual one. There's no dispute that a prosecutor cannot say, cannot give her personal opinion as to whether or not a witness is telling the truth. And there's no dispute that a prosecutor can't suggest that she has inside information. But there's also no dispute, I think, that a prosecutor can argue that the jury should believe someone's telling the truth and that somebody is telling the truth based on the evidence. So that's the law. And really the question here is, what was the prosecutor doing? And as a matter of fact, the district court found that she was not offering her opinion, that she was trying to argue from the facts. And the only question before this court is whether any competent counsel would have recognized that that's not what she was doing, that she was offering her opinion. And any competent counsel would have objected on that basis. And I just, there's, I think there's no, I mean, the post-conviction court thought that's not what the prosecutor was doing. The district court found that that's not what the prosecutor was doing. And so how could it be that any reasonable counsel would have recognized that that is what she was doing? So, I mean, I do think that if you look in isolation and some of this, you know, the short sentences that the prosecutor said that they're sort of, they're a little concerning perhaps, but you have to look at it in the context of the case. And in the context of the case, the prosecutor prefaced her entire rebuttal with, I mean, the issue was entirely at whether the witness was telling the truth about this second incident and that there was evidence at trial that suggested that the mother at first didn't believe the daughter and waited a week before telling the truth and telling the police what happened. And there was some, you know, some factual discrepancies in that when she was describing what happened. And so, after, when petitioner's counsel gave her closing argument, she said that you shouldn't believe this second incident happened, that the victim hadn't been consistent. And the prosecutor then gets up and says, this is all coming down to credibility about whether you believe the victim on that second incident, whether it occurred, like she said, and let me walk you through the evidence and explain to you why you should believe her. And that's the context in which all of these statements occurred. And that's why the PCR court and the district court all looked at that, all looked at those statements in context and said, she, the prosecutor, is not offering her opinion. She's not putting the state's imprimatur on this evidence. She's simply arguing to the jury, this is what they should so conclude. And that's perfectly proper, so long as that is what she's doing. And the record plainly supports the district court's conclusion that that is what she was doing. And I think that that's the end of this case, because that's a conclusion that you need to defer to. Can I just, for a second, contrast the two vouchings in this case? We have the vouching by the mother and we have the alleged vouching by the prosecutor. The state court seems very clear that it thinks one is vouching and one is not vouching. And I guess the mother's vouching is because the mother is saying, I have inside information. Is that why the mother's is vouching? Because it seemed like, and I understand they say, well, it doesn't have any effect because it only referred to the first incident, which he is not contesting. But it seemed that they're totally discounting the fact that this might be the first of two instances of alleged vouching. And why isn't there spillover? As to the first question, Your Honor, yes, I think that is the primary difference, is that the mother's statement, although, Frank, our position is that this isn't clearly vouching, even the mother's statement. But we recognize that the post-conviction court held otherwise. And I think the reason that the post-conviction court held otherwise is, as you say, because the mother is suggesting, this is my daughter. I know when she's telling the truth. The reason that I think that it's debatable whether that was even vouching is actually what the mother says. What the mother's asked, inappropriately, I would admit, can you tell when your daughter's being honest? And the mother says, for the most part. And she says, for the most part, in the context of a question about why did you wait a week before telling the police? And in fact, there's evidence then at trial that the Petitioner's Counsel puts in that the mother repeatedly made suggestions that she did not believe or did not want to believe her daughter. Counsel, a number of the statements that the prosecutor made to the jury, which your friend on the other side says constituted vouching, not objected to by defense counsel. One of them was this. She's not making this up. There is no reason for her to make it up at that point. All she's doing at that point is being completely honest with us. How is that not vouching? Well, it's not vouching for the reason that was suggested earlier. Putting the prejudice question aside, how is that not vouching? Right. Well, if she had said more clearly, based on all this evidence, we can tell she's not making this up. You can tell. You should conclude she's not making this up. Counsel, that's not what she said. I agree that's not what she said, but our point is that is in context what she was saying. I think there's some ambiguity, and if that's all she had said and it was not in any context, I mean, I think that would be a problem. She had a perfectly reasonable strategy based on the fact that the first charge was essentially conceded to argue to the jury, if you believe this child on the first incident, I will suggest to you that you should believe her on the second. She could have done that without any fear of vouching, but chose not to. She just flatly said this witness is believable. No, I agree with that, Your Honor, but what I'm saying is she said this witness is believable after going through the evidence and explaining why the jury should so conclude. And the district court, I see my red light is on. You can finish answering the question. Thanks. The district court found out as a fact that what she was doing was not offering her opinion, and I think that that is a reasonable interpretation, and at the very least, the question for this court is whether any reasonable counsel could have so concluded, and even then, whether any reasonable jurist applying Strickland could have concluded that a reasonable juror could have so concluded. And with that, we would ask you to affirm. I just have a question. What Judge Hawkins just read, when she says she has no reason to lie, does that imply extra record knowledge? No, I think that was in the context of her, the prosecutor's explanation that this is not, that there was a suggestion by the petitioner. She didn't like her mother's relationship with the petitioner, and she wanted her out. And this is after reviewing the evidence that, in fact, the complainant didn't dislike this person and wasn't upset with them, disputing that characterization, saying she had no reason to make this up. And I think also the prosecutor was pointing out that this is a difficult experience for any child to come into court and do something like this, and sort of, that's a very classic argument that, what does she gain from this? I don't think that points to anything outside the record. Thank you. Mr. Bornstein, we'll put two minutes on the clock and give you a chance to respond. Thank you, Your Honors. I would respond to that very last question and disagree with opposing counsel and say that that does imply extra record information. Kind of analogous, or in conjunction, rather, with that statement read by Your Honor, the prosecutor also similarly says, quote, again, this is on page 37 of the Eppelee's brief, she, responding to the complainant, would not still be willing to come in here and do what she did the other day if this was a lie, if she was just telling stories. That's putting herself inside the mind of the child, describing to the jury what that child's thought processes were, not saying I submit to you or, based on the evidence, she's just flat out saying what that child's reasoning process is, and prefacing it by saying she is not lying. Again, this happened to her. What's so troubling about that this happened to her statement, and what makes that quintessential vouching kind of on its own and in this context, is that this isn't like a physical injury case where a child was hurt in a physical abuse setting, and you have photographs, or there was a vehicle collision because of a drunk driver, and the prosecutor says this really happened to her. I mean, that's not this case. This case involves no independent evidence of that sodomy charge. The whole question comes down to whether or not this happened and whether the state's evidence is believable enough to pass a reasonable doubt standard as to whether this event happened, and yet you have the prosecutor emphatically saying she's not lying. This happened to her. That implies extra record verification, Your Honors, and I see that I am out of time. Thank you very much.
judges: HAWKINS, FORREST, Restani